# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **Lynda Denise Tucker,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 15-3175 |
| | ) |
| **Jimmie Russell, Sheriff of Taney County, Missouri, Corey Ridings and Chadwick Brewer,** | ) |
| | ) |
| **Defendants.** | ) |

## Exhibits

Ex. A – Plaintiff's Deposition;
Ex. B – Affidavit of Jimmie Russell, Sheriff of Taney County, Missouri
Ex. C – Personnel Policies
Ex. D – Chadwick Brewer's Deposition
Ex. E – Corey Ridings' Deposition

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff has admitted Jimmie Russell, Sheriff of Taney County, Missouri ("the Sheriff" or Sheriff Russell") was not personally involved in the sexual contacts between her and corrections officers Corey Ridings ("Ridings") and Chadwick Brewer ("Brewer") while Plaintiff was an inmate at the Taney County Jail. (Ex. A, p. 95, ln 3-6).

2. Sheriff Russell had no idea Ridings and Brewer engaged in deviant sexual behavior until after another inmate, Lori McCullough, came forward and reported their sexual contact with Plaintiff. (Ex. B, para. 12, 13).

3. Plaintiff admitted Sheriff Russell was not personally involved and did not know about the incidents with Plaintiff and Ridings and Brewer until after those incidents occurred. (Ex. A, p. 95, ln 3-11).

4. Plaintiff has admitted she has no knowledge of anyone ever telling the Sheriff that Ridings and Brewer were doing those types of activities with inmates before they had sexual contact with Plaintiff. (Ex. A, p. 96, ln 10-16).

5. Plaintiff admitted she tried to keep her sexual contacts with Ridings and Brewer secret while she was in jail.  (Ex. A, p. 81, ln 20-25).
6. Plaintiff told her boyfriend at the time that she felt bad about Lori McCullough revealing that secret.  (Ex. A, p. 88, ln 16-p. 89, ln 3; p. 89, ln 19-22; p. 91, ln 20-p. 92, ln 5).
7. Plaintiff admitted she was unaware of anyone coming forward with that information before Lori McCullough.  (Ex. A, p. 113, ln 25-p. 114, ln 2).
8. Plaintiff does not contend that Sheriff Russell ever witnessed the guards doing those types of activities with inmates.  (Ex. A, p. 95, ln 24-p.96, ln 8).
9. The Sheriff had policies regarding staff relationships with inmates, and those policies applied to both Ridings and Brewer.  (Ex. B; C).
10. Per those policies, corrections officers were prohibited from being personally involved with any inmate. (Ex. B, para. 8; Ex. C, para. 4(5)).
11. All communication between staff and inmates was required to be "conducted in a professional and dignified manner." (Ex. B, para. 9; Ex. C, para. 4(6)).
12. Those policies were in place the entire time that Ridings and Brewer were employed as corrections officers, and were available to all personnel.  (Ex. B, para. 5, 6, 7, 10).
13. Ridings and Brewer knew the Sheriff would never tolerate their having sexual contact with inmates, and that is why they tried to hide their actions by moving surveillance cameras.  See e.g. (Ex. D, p.85, ln 3-9; p. 88, ln 6-13; Ex. E, p. 76, ln 13-22).
14. After Lori McCullough came forward, Ridings and Brewer were investigated, terminated from employment, criminally charged, and convicted for having sexual contact with Plaintiff.  (Ex. B, para. 14, 15).
15. Plaintiff was an inmate at the Taney County Jail while Brewer was working there as a corrections officer.  (Ex. D, p. 72, ln 10-16).
16. Brewer understood that Ridings played with Plaintiff's breasts and that Plaintiff sucked Ridings' penis.  (Ex. D, p. 80, ln 11-17).
17. Brewer moved a surveillance camera in jail because he knew Ridings was going to have some type of physical contact with Plaintiff.  (Ex. D, p. 85, ln 3-9; p. 88, ln 6-13).
18. Brewer knew it was wrong for Ridings to have physical contact with Plaintiff, and that is why Brewer moved the camera.  (Ex. D, p. 101, ln 22-p. 102, ln 3).
19. Brewer understood Ridings would cover for him, so that Brewer too could have contact with Plaintiff.  (Ex. D, p. 131, ln 9-11).
20. Brewer knew Ridings was going to point the camera in a different direction for him. (Ex. D, p. 131, ln 6-8).
21. Brewer asked Plaintiff to expose her breasts and she exposed her breasts.  (Ex. D, p. 76, ln 6-9).
22. Brewer touched Plaintiff's vagina.  (Ex. D, p. 76, ln 24-25).
23. Brewer understood it was wrong to have sexual contact with an inmate and admitted he "messed up."  (Ex. D, p. 101, ln 19-21).

24. Brewer did not need anyone to tell him it was wrong to have sex with inmates. (Ex. D, p. 97, ln 10-13).
25. Ridings moved a surveillance camera in the jail "so that [Brewer] could touch [Plaintiff's] breasts or whatever he was going to do." (Ex. E, p. 76, ln 13-22).
26. Ridings moved the camera for Brewer so that there would be no recording of the event. (Ex. E, p. 77, ln 23-25).
27. Ridings did not need to be trained or told he should not have sex with inmates because it was a matter of common sense. (Ex. E, p. 84, ln 1-6).
28. Ridings knew it was improper to have sex with inmates. (Ex. E, p. 87, ln 13-15).

KECK & AUSTIN, L.L.C.


By:/s/ Damon S. Phillips
    Patricia A. Keck  #42811
    Damon S. Phillips  #52901
    3140 E. Division
    Springfield, Missouri 65803
    Telephone: (417) 890-8989
    Fax: (417) 890-8990
    pat@keckaustin.com
    damon@keckaustin.com

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was provided to the interested parties listed below by CM/ECF on this 26th day of July, 2016:

Mr. T. Brody Kempton
Mr. Mark Kempton
P. O. Box 815
Sedalia, MO  65302

Mr. Stuart King
P.O. Box 1245
Springfield, MO 65801

Jason Coatney
Jones & Coatney, LLC
601 S. Grant
Springfield, Missouri 65806

    /s/ Damon S. Phillips
      Damon S. Phillips